## BABIN v. BLANCHARD.

### No. 1928.

Court of Appeal of Louisiana.
First Circuit.

Jan. 11, 1939.

642

Harris Gagne, of Houma, for appellant.

Guion & Schulze, of New Orleans, for appellee.

DORE, Judge.

This is a suit praying for damages in the sum of $2,000 for alleged slander. Plaintiff's petition alleges that the defendant in the presence of the Justice of the Peace and Constable of the First Ward of the Parish of Terrebonne and numerous bystanders charged that the plaintiff while lying in wait did himself or did procure others while lying in wait to make an assault on defendant's son, and that the felony was proclaimed in utter disregard of the truth and in the absence of probable cause. The defendant admits having charged the plaintiff with either assaulting his son or hiring others to do so, but contends that such charge was made upon probable cause and to the parish officials only.

The lower court found from the evidence that the defendant had publicly accused the plaintiff of assaulting his son or of having hired others to do so, but that such accusation was made on probable cause and without malice, and consequently dismissed plaintiff's suit at his cost. The plaintiff has appealed.

A review of the record reveals that the plaintiff and defendant have been neighbors for years, and that they lived in peace and harmony until the defendant's son married plaintiff's minor daughter without the knowledge and consent of her parents. In the early part of April, 1937, the defendant's son, by prearrangement, met plaintiff's daughter in Houma where she was attending high school and took her to Thibodaux in the Parish of Lafourche where they were married by a justice of the peace.

After the marriage ceremony they returned to the home of the defendant where, after a conference between the bride and groom and the groom's parents and family, it was decided that the young couple should go to the home of the girl's parents, to whom she had previously sent a note telling them of her intention to elope, and apprise them of their marriage and receive their forgiveness, if not their blessing. The young couple met the girl's parents already out in search of her and, instead of a spirit of forgiveness and, perchance, blessing, the parents displayed a disposition to break up or undo the marriage, take their daughter back home, and do violence to the young man.

The young couple, plaintiff and his wife, and other members of the family, went to Thibodaux to the office of the justice of the peace who had performed the marriage ceremony earlier that day, and there the bickerings and quarrels continued; plaintiff and his wife making accusations and threats against the young man who had thus surreptitiously taken their daughter from them. A truce was reached through the intervention of the justice of the peace who prevailed on the couple to go before a priest and have the ceremony reperformed, as it was one of the grounds of complaint of the girl's parents, devout Catholics, that the marriage would not be valid unless performed by a priest. This was done, and the young couple thereupon re-

turned to the home of the husband's father, the defendant herein, where they took up their residence.

While the feelings of the bride's parents were apparently somewhat appeased as a result of the marriage in the Church, it appears from the evidence that they never forgave the young couple or the defendant and his family, and plaintiff continued his hostile attitude and discouraged offers of peace and made expressions indicating that he would have his revenge. The attitude of the defendant, the boy's father, seems to have been one of conciliation, but he evidently knew the hostile and unfriendly feeling of the plaintiff, the father of the girl.

On May 14th, a little more than a month after the marriage, the young husband reported to his young wife, his father and his family, that he had been struck over the head by some unidentified assailant or assailants and knocked unconscious while he was gathering wood on his father's place. The young wife on finding her husband thus assaulted stated that she hoped it was not her father and mother who had done it. Some negroes were working for plaintiff in a field near the woods where young Blanchard claims to have been assaulted.

On being informed of the alleged assault on his son, the defendant set out to have the matter investigated and the assailant prosecuted. His suspicions were directed toward the plaintiff. He went to the justice of the peace and the constable (having previously secured advice to proceed thusly from his friend, the justice of the peace in Thibodaux who had married his son and plaintiff's daughter) and told them that he suspected that plaintiff had assaulted his boy or had hired the two negroes to do it.

■ The constable then went with the defendant to the home of one of the suspected negroes, and the defendant there made a statement, in his presence and in the presence of a negro woman and two negro men, to the effect that plaintiff had assaulted his son or hired the two negro boys to do it.

Since it seems clear that the defendant did publicly accuse plaintiff of either assaulting his son or instigating others to do so, it follows that the defendant, in order to avoid the charge of slander, must either prove the truth of the accusation or show that the same was made without malice

and upon probable cause and in the bona fide belief that a crime had been committed and that plaintiff was connected with it. As there is little effort and insufficient proof to show the truth of the statement, the defendant must rely on the existence of probable cause for making the statement and the absence of malice on his part.

■ In determining the question of whether or not the defendant had probable cause to make the accusation the situation at the time he made the accusation must be considered. The son had reported to his father that some one assaulted him in the woods. It is true that the assault was not a serious one, as the son did not go to see a doctor for several hours afterwards and in the meantime he was able to be up and to get about as usual, and there was only a small sign of injury on the boy's head. But, regardless of the severity of the assault, and regardless of whether or not an assault was actually made, the defendant had good reason to believe from the report made to him that his son was assaulted and severely injured by some unknown person.

■ This being true, the defendant would be expected and had a right to seek out and prosecute the one making the assault. He went to the officers of the law, the proper course for him to pursue. He first made the accusation against plaintiff in their presence only. It is true that he later made a public accusation in the presence of a negro woman and two negro men, but that was while he was in the company of the constable who was assisting in the investigation.

■ So far as the record shows defendant's son had no other enemies other than plaintiff and his family. Defendant was familiar with the events that had transpired when his son married plaintiff's daughter, and he also knew of the more or less veiled threats that plaintiff had made to get revenge. It must be borne in mind, too, that the only persons near the place where defendant's son claims to have been assaulted were the two negroes who were picking beans for the plaintiff in a field nearby. Under the circumstances, it is reasonable to suppose that the defendant would suspect the plaintiff as the cause of the assault, even though he did not have sufficient proof to support his suspicions. And the defendant was not alone in his suspicions, since it appears that the justice of the peace who was familiar with

all the circumstances, as well as plaintiff's own daughter, suspected plaintiff of having something to do with the alleged assault. Nor do the facts and circumstances show that defendant acted through any malice in making the accusation. As already indicated, he seems to have been anxious for plaintiff to forgive the young couple, and he had made efforts to bring about peaceable relations between the two families. In consulting the officers first, he showed a desire to have the investigation and prosecution made in the proper way.

It is our opinion that the lower court did not manifestly err in finding from the evidence that the defendant, in making his statement with reference to plaintiff, acted without malice and upon probable cause, and having so found the lower court correctly rendered judgment in favor of defendant dismissing plaintiff's suit at his cost. The judgment is therefore affirmed.